I guess I must say, first of all, I welcome the advocates here for this important argument in Pizzuto v. Randy Valley. The state of Idaho is the defendant. Before we start, though, I would be remiss if I did not mention that our courtroom deputy today is Susan Gomez, who is about to retire after 35 years of service. We really, as a court, have benefited from everything she's done as a staff attorney, then as a deputy clerk for the whole court, and coming here today is a great privilege for us. And second, I want to welcome the advocates. For Mr. Pizzuto, we have Mary Elizabeth Spears, and then for Idaho, we have Mr. Lamont Andrews. So thank you all. This case is set for 30 minutes per side, and of course, if someone gets in trouble with their timing, just ask me, and I'm sure I'll be able to give you a little extra time. But if you can try to get done with your argument in 30 minutes, that would be a big help to the court. Okay, without further ado, we'll start with the appellant. Judge Gould, with your permission, I would like to just add a comment regarding Susan. You know, there are a number of people who work behind the scenes to make the court work, and Susan, for the last 36 years, has been one of those people that the judges rely on to help the court work go seamlessly. She is just amazing. Her institutional knowledge, her willingness to always be available to answer questions, and her unflappable approach. You can only imagine, if you're trying to work with over 50 judges and satisfy all of them on a daily basis, how challenging that can be. And she has done it with aplomb, she's done it with intelligence, and she's just been a jewel for the court. So Susan, as I told you, I'm sad and I'm happy. I'm sad that you're leaving us, but happy that you're moving on with your life in a different direction. So congratulations and thank you for everything you've done for the court. I will just add my thanks to Susan is just wonderful. And normally, when people get my cell phone calls, it goes immediately to voicemail when they see my number calling. But Susan always picks up. She's always terrific. And I wish her all the best in retirement. But Susan, we will so very, very much miss you. You are the epitome of a great court and government employee. And thank you so very much. So now you get to follow that. Thank you, Your Honor. Good morning. May it please the court. My name is Mary Spears for Mr. Pizzuto. I'd like to reserve 10 minutes in rebuttal and I'll endeavor to keep my own time. This is an unusual case about a usual question. When does the state's arbitrary decision deprive the capital petitioner of due process? Here, the Idaho Supreme Court enshrined the state's commutation or pardons commission as the actor responsible for commutations, but then denies Mr. Pizzuto the benefit of the commission's decision in his favor. It then fails to resolve a challenge to that action on the merits. That creates a federal claim in habeas that this court can and should decide de novo. And because it's a classic denial of due process, the court should reverse the dismissal of the petition. Turning first to cognizability, the Idaho Supreme Court says numerous times in its opinion, the commutation's power in Idaho is vested in the commission. But then that creates an expectation that the commission's decision is what's final. So counsel, I'm going to interrupt you at the beginning because I'm going to start with my biggest problem with your argument, that multiple times, that's how you characterize the decision of the Idaho Supreme Court. With one hand, they recognize and with another hand, they take away. That's not how I read the decision. When I read the decision, including as to the 1986 constitutional amendment, they say the word only in the constitutional amendment, only as provided by statute, showcases the people's intent to oversee the use of the commutation process through statutory government. In other words, when the Idaho voters adopted the amendment, they preserved the constitutional power of the commission while ensuring that the extent and manner by which that power is used became subject to legislative government as provided by statute. Now, we may have interpreted the Idaho Constitution differently, but I don't understand your argument as how they say, you claim they say they recognize that the commission had this absolute power and then they took it away. I read them as saying there is no absolute power. It's only as provided by statute and gave the ledge the power in this case, for example, to change that absolute decision making in the case of the capital case. So how is it that it's arbitrary and giving with one hand and taking away in another when the Supreme Court is interpreting the constitutional provision to say the people made a material change? Because of the use of the language vested and the use of the language exercised, the power is vested in the commission, wholly vested in the commission. The power is exercised by the commission. The governor does not usurp that power. But that's not what they say. They say the phrase only modifies the clause to grant commutations and pardons after conviction and judgment. So they said, yes, this was what it prior to 1986. But post 1986, the people gave the legislature power to modify. So I just am having a lot of trouble understanding your argument here. I mean, putting aside, can we recognize it as a cognizable de novo or something else? I'm just having trouble looking at this as other than a very normal statutory construction case. That is how the Idaho Supreme Court cast the issue in this opinion. If we look back to other opinions that use and interpret the same language, for example, Evans v. Andrus, which is a 1993 Idaho Supreme Court case, that's 855 P. 2nd at 472. There, the Idaho Supreme Court is interpreting the exact same language. Supervision of a public education shall be vested in a state board of education, the powers and duties of which shall be prescribed by law. That seems pretty similar to the language of the 1986. The courts changed their view. I mean, a court changing its view on a particular legal issue may be in some sense wrong, but it's not beyond the power of the court or create, in my view, a due process issue because a court chooses to interpret words in one statute one way and in a another way. I think that the fact that the court is interpreting this like the Evans language is very clear shall be vested in a board of education. The Idaho Supreme Court interprets it to mean what we all know that it means a consummated power. Black says it's an unconditional power. That's what vested means. We all understand what this language is and the implications of it. It's very clear when it's about a state board of education, what vested means. But then for Mr. Pizzuto's case, it's no longer clear. The fact that the court is picking and choosing how it interprets vested, how it interprets exercise and how it interprets power is different across these contexts, and that makes it fundamentally unfair. Remind me in the BOE case, and I apologize that I don't remember. Did the language of the Supreme Court interpreting, did it have the word only in it? It said the powers and duties shall be prescribed by law. But not only as provided by statute, because the Supreme Court in this case significantly emphasized the use of the word only. It did emphasize the use of the word only, which is why the outcome of the opinion was so surprising, I think, to both parties. We had pressed on appeal that the meaning of vested was straightforward, that the commission remained vested with the power despite or irrespective of the 1986 Amendment. The state pressed the argument that the 1986 Amendment divested the commission of at least some of its power with respect to capital cases. And in its opinion, the Idaho Supreme Court tried to split the baby. It said, yes, the power remains vested. However, the outcome must be different. The commission's decision can be discarded and therefore hit the commutation of Mr. Pizzuto's lessons can go away. That is what we submit creates the federal question. Is the Idaho Supreme Court interpreting things differently across different contexts in such a way that penalizes a capital petitioner? In Evans v. Andrus, the question is whether supervision of the public schools can be split up into three sub boards. And the court said, no, vested means vested. We know what this means here. Vested means vested. And yet in a case with much higher stakes, the outcome is different. And Mr. Pizzuto loses the benefit of his commutation. Well, the word in the con provision is the board or the majority shall have the power. And only is provided by statute to grant commutations and pardons. So the actual language is power, right? Yes. And that power is vested in the commission through the Idaho Supreme Court. Yeah. If I could interject a question, help me to understand the full dimensions of this case. Well, is the common law development before Idaho's constitution and statute, is that relevant here? Should we look at the traditions of the common law under which the executive himself or herself, the president or the governor of a state in our system here has the power to give pardons or commutations? It is relevant in the sense that that's what the Idaho Supreme Court looked at to help interpret the statute and look to other jurisdictions that have similar language or similar provisions. However, because in Idaho, the commutation, the pardons commission is a constitutional actor. And in the same constitutional clause in Idaho, the governor is given separate powers. The Idaho Supreme Court was looking less, I think, at the common law practice of the executive branch its powers generally in the clemency context and more in the sense of here is a constitutional actor that is given these powers by the state constitution. What does that mean? And in the course of interpreting that language, we contend that it says, here's the power. This is the actor. This actor exercises the power, but the ultimate decision can lie with someone else. And that's what we contend is arbitrary. OK, thank you. I think there are multiple reasons, as I alluded to earlier, multiple ways that the court could have decided this question differently, and we're not here. It could have, as I said, decided the issue in accordance with our view that it's vested in the commission. The commission's decision goes. It could have sided with the state. The commission's power is partly divested. This decision can stand. It could have gone with the way the concurring opinion decided the issue, the powers vested in the commission. But is there an enabling statute that allows the commission to carry this out? So, counsel, it's your argument that because the decision could have been different, that constitutes a due process violation? No, the argument is that the decision could have been different in many ways that don't lead to a due process violation. The latter two we would have taken issue with, I think, as a matter of Idaho state law or Idaho constitutional law. But that's not a federal due process problem. Our federal due process problem arises from the way that the Idaho Supreme Court sets up the expectation and then denies the expectation in the same opinion in ways that contradict the things that it has said prior about this language and about similar language in past cases. Is it your argument that it was not within the purview of the Supreme Court to make that decision? It was certainly in the purview of the Supreme Court to make the decision. That it did, the decision that it actually made. You're saying it was within the purview, but the way they made it violated due process? That's right. Of course, the Idaho Supreme Court is empowered to and must be the original actor that interprets Idaho constitutional law. That's not this court's job. This court's job is to look at how this decision was reached and say, is it fundamentally fair? There's a number of cases that we cite and that the state cites that say a matter can be an application of state law that's fine under state law. But is it fundamentally fair and therefore does it violate due process as a matter of federal constitutional law? If we look at Slovic v. Yates from this court, which we cited, similar issue there, an admission of evidence under, I think, California evidence rules. Is that acceptable as a matter of fundamental fairness for due process purposes? So let's take a hypothetical. Let's say we have a federal prisoner serving time in the Ninth Circuit. And his claim is that his original conviction was affirmed by the Second Circuit in exactly as arbitrary a way as you're claiming the Idaho Supreme Court did here. And that that denied him federal process because on the one hand, the Second Circuit giveth, and on the other hand, the Second Circuit taketh away. So we would be able to say, for example, in a habeas case that we have jurisdiction over because the prisoner's in the Ninth Circuit, that the Second Circuit's decision, the way it reached, it was arbitrary in a way that denied the federal prisoner due process. If I'm following Your Honor's question, are you saying that you would be looking at the outcome of the Second Circuit or that the Second Circuit? Yes. The way they reached the decision, it was just as arbitrary in our view as you believe the Supreme Court of Idaho was here. I think that would be within this court's power, but. And we could also theoretically do the same thing. For example, if it were affirmed by the United States Supreme Court in a way that we decided was entirely arbitrary and not subject to logical 2 plus 2, and that the prisoner brought a habeas case based on that, we could say the U.S. Supreme Court in the first instance denied the prisoner due process. Well, that would be the United States Supreme Court is above this court. No, I understand. I understand that. But it's the first time the claim is made that the Supreme Court's decision denied the petitioner due process. But I think that would be an argument that could be made. I don't think that because the difference in courts and the difference in supervision is different, I think that that would be that would present certainly more problems than criticizing the action of a sister circuit. And here, of course, this court is called upon to see if the state courts within the Ninth Circuit have adhered to their obligations, their constitutional obligations. That's the classic purpose of habeas, that something can be a matter or a question based on premised on state law and yet still violate federal due process. That's the law across jurisdictions. The state has cited the Fifth Circuit case, Jones v. Cain, Sixth Circuit case of Spalla v. Foltz. The question isn't, is this a state law issue that the petitioner has a problem with? The question is, does the interpretation, does the way that the state court applied this make it fundamentally unfair? Does it violate due process? Turning briefly to adjudication on the merits, I think because this claim arose as a matter or from the Idaho Supreme Court opinion, it can only have been brought on rehearing. That's the first available opportunity to raise this claim. We promptly raised it. It was denied in a single sentence three days later. Both of the parties agree, albeit at different times, that the claim wasn't decided on the merits. The state says it can't be, it wasn't decided on the merits because there's not enough time. Three days is not enough time to decide this issue. It's not a, it's not a decision. We're looking at that de novo, yes. That's right. So counsel, how do you, how do you deal with the Richter presumption? We think the Richter presumption here is overcome for three reasons. One, the state agrees with us. Two, the time is a factor. It's likelier, we believe, that the claim was overlooked than that it was actually decided on the merits. And three, that the denial of rehearing isn't a judgment. It's not precedential. It isn't an affirmance or a denial. The time pending rehearing is just time that suspends the original opinion in Idaho. Once rehearing is denied, the original opinion is what counts. But to go to Judge Gould's question, Richter clearly says there's a presumption. You don't argue with that, right? Correct. And it says the presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely. And you're saying that we should find because this was like a day, and even though they said after due consideration it's denied, we should just find they missed it or ignored it, that that's more likely? We think that given the combination of circumstances, it is more likely. Um, are you aware of the fact, just to pick a court at random, ours, that we often deny petitions for rehearing, not rehearing in bank, but rehearing almost immediately after the petition is made with a one-line order exceedingly similar to the one the Idaho Supreme Court made? Yes. And we're not solely relying on the time frame, although the state did rely on the time frame when it said that this was not a decision on the merits. That was the argument it made to the district court. We also take the position that this is not a decision. This is not an adjudication, but the denial of rehearing isn't deciding any of the party's arguments. This is similar to Gould, the Second Circuit case that we cite in our briefing. They're similar situation, state's highest court. Here's a case, a claim arises that can only have arisen from the opinion. It's a claim based on Shuttleworth about extending, I believe, aggravators. And the Court of Appeals denies rehearing. Second Circuit says discretionary denial of rehearing isn't a judgment, isn't an adjudication. Therefore, it's not adjudicated on the merits. Fairly presented, but not decided on the merits, one of the very rare circumstances where that is true. Although that's not exactly what the Supreme Court, how it set up the issue in Richter, when a federal claim has been presented to a state court, which happened here, right? And the state court has denied relief, which it did, right? Yes. It may be presumed that the claim is adjudicated on the merits in the absence of any indication or state law principles to the contrary. Yes. So, but again, your view is more likely than not that they just never reached the merits or just missed it, notwithstanding the fact that they said they did this after due consideration. Yes, Your Honor. Our position is that although the Richter presumption is a heavy burden to overcome, it can be overcome. I believe Johnson v. Williams teaches us that. And in this case, this company... You mean the coin flip language? The coin flip language? You're talking about Justice O'Connor's coin flip language, right? Not Woodard, but Johnson v. Williams. Oh, okay. Yes. Sorry. That's our position that it can be overcome, although it's difficult. And in this case, we believe based on the reasoning that's presented or, you know, analogous reasoning to that presented in gold by the Second Circuit, that it has been overcome here. The case you're citing, though, the court also said federal courts have no authority to impose mandatory opinion writing standards on state courts, right? That's true. However, given that it has written an opinion, it has heard the case, and then it has denied re-hearing as a discretionary re-hearing, that in the Second Circuit's view is not an adjudication on the merits, and therefore it's reviewed de novo. Thank you, Your Honors. Thank you, Judge Gould. May it please the court, Lamont Anderson representing the respondent, Randy Valley. Pizzuto's claim at its base is nothing more than asking this court to reverse the Idaho Supreme Court's interpretation of the 1986 amendment and one of its statutes, Idaho Code 20-1016, that was enacted as a result of that amendment. He's asking this court to tell the Supreme Court, you got it wrong when you interpreted Idaho's constitution. And in all respects, what that position would do is nullify the amendment to the constitution that states only as provided by statute. This is still a state claim, and it's just not cognizable. And we know that the United States Supreme Court and this court and other circuits have said that federal relief does not lie for errors of state law, including to re-examine state court determinations on state law questions. As I said, numerous courts have said that, including the United States Supreme Court, other circuits. Now, really, Pizzuto fails to mention any of these cases or really take them to task. But merely states on page 8 or page 14 of its initial brief and the reply brief on page 7, the claim is not the correctness of the Idaho Supreme Court's decision, but the manner in which it reached its conclusion. Honestly, I don't see the difference. It's still a state law question. Counsel, opposing counsel's position is that there was a violation of due process in the ruling by the Supreme Court because it was arbitrary. What's your response to that? Your Honor, I think it's a misinterpretation of the Idaho Supreme Court's decision. The Idaho Supreme Court repeatedly said that the power is still vested in the commission. My friend is correct that that's not the position that the state presented before the Idaho Supreme Court. We argued that the power had been changed as a result of the amendment and the statute to the governor. That was rejected by all five members of the Idaho Supreme Court. But three of those members, in fact, I believe all of them when you look even at the concurrence, said, no, state, you're wrong. The power is still vested with the commission. What happens is that the commission, if the commission denies the request for commutation, it's done. It's over. That's their power. If the commission makes a recommendation for commutation, it then goes to the governor, who is, according to the Idaho Supreme Court, the check and balance on this system. And if the governor says, no, his death sentence shouldn't be commuted, then it goes back to the commission. If the governor agrees that the commutation should be issued, it is then returned to the commission and it is the commission that issues the commutation. It is not the governor. It's the commission. And I think it's important to understand that because it's part of Idaho Code 21016. It's part two. That's the statutory provision that was enacted after the amendment. No commutations or pardons for such offenses shall be effective until presented to and approved by the governor. And I'm sorry, that's not what I was looking for. There is a provision that says that nothing happens until the governor acts one way or the other, and then the power is still within the commission. So I fail to see how it's arbitrary. Now, I can envision the argument under Woodard. Justice O'Connor, of course, said that there is a due process violation when a petitioner is not afforded what the state law permits and when there's a coin flipping. Well, I can see the argument on the must be afforded what the state law permits, but it is the Idaho Supreme Court that determines what the state law is that this court could then determine whether the state followed state law. And that is really the issue before this court. What is the state law? And the state law is that which was determined by the Idaho Supreme Court. No other entity has the power or authority to second guess that decision. I would suggest to the court that this case is governed by Rose. I really struggle to see a distinction. Now, Pizzuto attempts to overcome Rose by, again, going to the correctness versus the manner distinction, whatever that is. There's no authority, they cite, to establish such a difference. It still reaches the ultimate conclusion, the ultimate reason. Whether it's a correct decision or the manner, it's still the Idaho Supreme Court's decision. But Pizzuto also talks about the death penalty being in limbo at that time. Without being flippant, so what? There's nothing in Rose that talks anything about that being a factor. No constitutional right to a jury trial. Again, so what? I just don't see how they can get around Rose. What they are attempting to do is really just white out, if you will, the amendment from 1986. To the extent that the court were to go on to the merits, your honors are correct that the Richter presumption applies here. Now, my friend talks about that, if I understand the argument correctly, that the state agreed that the Supreme Court, Idaho Supreme Court, did not reach the merits. That was true at one time. That was true in our initial brief before the district court, that the district court struck from this record. And I would suggest because it was stricken, it has no application whatsoever. And we really didn't, what we did was argue that it was procedurally defaulted because it wasn't fairly presented to the court prior to their brief in the petition for rehearing. So I would suggest that it doesn't matter. It's not relevant. Time is an issue. Interestingly here, it really wasn't at all because the governor had all of the documents. And I'm assuming that Pizzuto was referring to the governor's decision. To the extent she's referring to the Idaho Supreme Court's decision on rehearing, as Judge Bennett said, courts do that all the time. No, but I think that is what your friend is referring to. She can speak for herself when she gets back up there, but I think she's saying and has argued that this is a complicated due process issue that they raised for the first time on rehearing. And essentially, it was instantly denied by the Idaho Supreme Court the next day. And therefore, that rebuts the Richter presumption. But I think that she's talking about the speed with which the Idaho Supreme Court denied rehearing. And to that extent, Judge Bennett, I still don't see how time is a factor because particularly in death penalty cases. I mean, I've had death penalty cases where death warrants have been issued. And there is brief writing, oral argument, and decisions all within, I believe the Creech case was a matter of seven to ten days. The denial of the petition for rehearing en banc was issued. If it wasn't one, it was no more than two days. Judges are equipped to handle these types of arguments. I would suggest it's just not that complicated an issue at all. The argument that rehearing is not a judgment. If rehearing is not a judgment, then neither is the original decision. A judgment doesn't come out until after the decision is issued, 21 days in Idaho, or the day that rehearing is denied. The judgment argument, to me, just doesn't particularly pass mustard in any way, shape, or form. Again, I would focus if we're going to talk about the merits. I don't understand how anything associated with the Idaho Supreme Court's decision was arbitrary, which is why we cited numerous cases explaining what falls into the category of a due process violation after Woodard. And if you look at those cases, from this circuit, and I believe we might have cited even one or two others from other circuits, what the Idaho Supreme Court did in this case is nothing compared to what other courts have rejected as a due process violation. This is certainly not a coin flip. And as I said earlier, the interpretation of Idaho law and whether they follow Idaho law is exclusively within the providence of the Idaho Supreme Court. If there are no other questions, the State would respectfully ask that the Court affirm the District Court. Thank you. Thank you, Mr. Ranch. Okay, Ms. Spears. I'm going to ask the Court Deputy to increase your time to 10 minutes, which you initially wanted to reserve for a rebuttal. Thank you, Your Honor. I think to first address my colleague's cognizability questions, the State relies very heavily on Rose v. Hodges. As I read Rose, I don't believe a federal question is raised in state court in that case. The problem that the Supreme Court identifies is that the Court of Appeals, the Sixth Circuit, doesn't address a federal question in its opinion. But the question in federal court is failure to present, failure to exhaust state remedies. I think the problem there is that there is no claim of federal law that's brought in Tennessee court. The federal claim is brought for the first time in habeas. That's not the case here. That's here. There is a state law interpretation question. We challenge it in state court. We then bring a federal claim based on the arbitrary way that the court decided that issue of state law. This and Rose are different. I think also about the decision on the merits question. Um, the state says its concession that it was decided to quickly was stricken. I think that also appears other than in the answer that was stricken. It appears that the district court record at Docket 29, TAC 1, pages 21 to 22. I am not sure if that is the excerpt in the excerpts of record. I can supplement after if necessary. There, the state makes the same argument. The time would not have allowed for adequate consideration of the merits. There is no consideration of the merits. There's no adjudication of the merits. And in that case, it's reviewed de novo. I also think that. Council makes a point that the decisions on merits or decisions on rehearing. That if that's not a decision on the merits, then neither is the original opinion. My understanding of Idaho law is that as I believe I said, my original argument. Original opinions issued. The time for rehearing suspends the finality of the original opinion. Once we're hearing is denied. The original opinion becomes the judgment. There's nothing about the due process argument in that original opinion. In the judgment on the merits, because it wasn't available. We could only again have brought it on rehearing. And finally, about Woodard and the application of Woodard to this case. Justice O'Connor gives two circumstances in which due process is denied in the clemency context. Of course, our argument is that this court isn't bound strictly by Woodard. We were not bound strictly by Woodard. Clearly established federal law can be outside of the clemency context. Andrew versus White teaches us that. But putting that issue to the side. Woodard says if a clemency decision is reached in a manner akin to a coin flip. Or if the state deprives the petitioner of its own clemency procedures. And then I believe counsel said the Idaho Supreme Court determines what those procedures are. The Idaho Supreme Court determines what state law is and what the process is that you are due. And our argument is that that's exactly what happened here. The Idaho Supreme Court decides the matter by saying the powers vested in the commission. It creates a process. And then it denies or it creates an expectation. And then it deprives Mr. Pizzuto of the expected outcome of its own language. And its own decision making. If we look at, for example, Young versus Hayes, which I believe the state cited in its brief. That is an Eighth Circuit case in which the Eighth Circuit is clear. Clemency is a matter of. There's no right to clemency. The petitioner isn't arguing that he has a liberty interest in the right to clemency in the decision that's reached. What he's saying, and it's analogous to what we're saying here. The state, their Missouri, created a process. Here's how the clemency process works. You can have people testify on your behalf. The petitioner there wanted a state employee to testify on his behalf. The state of Missouri threatened to fire that employee. And the Eighth Circuit said that is fundamentally unfair. That violates due process under Woodard. Because here the state is setting forth the process that is due. And then it's depriving the petitioner of access to that process. So to hear you're not required to have a clemency procedure. But once you do, you must follow it. If your procedure is that the powers vested in the commission, the commission is the decision maker. That process must be followed. The state accuses us of wanting to read away the 1986 Amendment. I think that's a state law argument. Our argument is given the existence of the 1986 Amendment, the Idaho Supreme Court still decides the matter in a way that says, here's the power, here's the body that exercises it, but not for you. And that's the denial of due process that we argue occurred here. Under a line of due process case law, but also under Woodard. If there are no further questions, we respectfully ask that the court reverse the dismissal of the habeas petition. Thank you. I have no questions. Judge Rawson?  No, thank you for asking Judge Gould. Okay, well, thank you very much. Let me just say, I think. Ms. Spears and Mr. Anderson, I want to thank you both for excellent presentations on these difficult issues. The court will now take the case under submission, and you will hear from us in due course. Thank you.
judges: GOULD, RAWLINSON, BENNETT